**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| AEGIS BUSINESS CREDIT, LLC | * | |
| *Plaintiff* | * | |
| v. | * | Civil Case No. 8:21-cv-00668-AAQ |
| BRIGADE HOLDINGS, INC., *et al.*, | * | |
| *Defendants* | * | |
| | * | |

**MEMORANDUM OPINION**

This is a case concerning a corporation's alleged failure to abide by the provisions of a contract requiring it to pay certain amounts of money to another corporation. Pending before the Court is Plaintiff/Counter-Defendant Aegis Business Credit, LLC's Motion to Dismiss Defendant/Counter-Plaintiff Brigade Holdings, Inc.'s Counterclaims. ECF No. 117. For the reasons provided below, Aegis Business Credit LLC's Motion shall be denied.

**BACKGROUND**

The factual and procedural history of this case is recounted in detail in this Court's prior Opinions, dated August 29, 2022, ECF No. 98, and January 10, 2023, ECF No. 113. Accordingly, the recounting below will focus on the facts relevant to the pending Motion.

This case arises out of a November 20, 2018 Factoring and Security Agreement[1] between Aegis Business Credit, LLC ("Aegis") and Brigade Holdings, Inc. ("Brigade") and an

---

[1] As discussed in this Court's previous Opinions, I use the term "Factoring and Security Agreement" only because the document is termed as such – not because I agree that it was a factoring agreement, as opposed to a usurious loan agreement. ECF No. 98, at 2 n. 1; ECF No. 113, at 2 n. 1.

Indemnification Agreement executed by Brigade's principal, William Bethell ("Bethell"). ECF No. 85, at ¶¶ 14, 15, 25. Under the terms of the Agreement, Aegis agreed to purchase receivables generated by Brigade's participation in rebate programs regarding the design, manufacture, and installation of LED lights. ECF No. 98, at 2. Under the terms of the Agreement, the Agreement and all transactions thereunder are governed by, constructed under, and enforced in accordance with the laws of the State of Florida. *Id*. at 4. *See* ECF No. 1-1, at ¶ 28. In its Second Amended Complaint, Aegis advanced multiple claims arising out of Brigade's and Bethell's alleged breach of the Factoring Agreement. ECF No. 85.

On October 19, 2022, Brigade filed an Answer to Aegis's Amended Complaint and included four Counterclaims. ECF No. 101. Specifically, Brigade alleges that Aegis committed conversion by seizing inventory that Brigade held in consignment (Count I), breached the contract between Aegis and Brigade by demanding payment from account debtors and seizing the consignment inventory (Count II), tortiously interfered with a contract between Brigade and Sydhee Lighting Co., Ltd. ("Sydhee") and other business relationships between Brigade and its clients (Count III). *Id*. Additionally, Brigade alleges that the underlying agreement between Brigade and Aegis violated state usury laws (Count IV). *Id*. Aegis responded by filing a Motion to Dismiss Counts I, II, and III, advancing various arguments as to why Brigade's counterclaims allegedly fail to state a claim. ECF No. 117.

The substance of Brigade's conversion and tortious interference claims relates to an alleged business arrangement between Brigade and Sydhee. As Brigade describes it, on or about December 5, 2018, Brigade (as consignee) entered into a consignment agreement with Sydhee (as consignor), pursuant to which Sydhee delivered and Brigade stored lighting inventory for future installation. ECF No. 101 at ¶¶ 11-12. However, Brigade was unable to install the inventory or

do other work as a result of lockdown orders related to the COVID-19 pandemic. *Id.* at ¶ 13. Meanwhile, the amount of interest Brigade owed Aegis continued to accumulate. *Id.* Ultimately, Aegis declared default against Brigade, seized the consignment inventory, and began selling it and applying the proceeds to Brigade's outstanding balance. *Id.* at ¶¶ 14, 16. According to Brigade, Aegis knew that Brigade was holding the inventory on consignment from Sydhee and thus knew Aegis did not have the superior interest in said inventory. *Id.* at ¶ 15.

Brigade also alleges that Aegis acted recklessly when dealing with Brigade's customers, including: 1) sending letters demanding payment for jobs not yet completed; 2) misaddressing demand letters to different customers; and 3) by possessing the inventory discussed above, preventing Brigade from conducting business. *Id.* at ¶¶ 18-21. This caused Brigade's customers to stop working with it and withdraw agreements for future work. *Id.* Brigade also alleges that, by repossessing the consignment inventory, Aegis interfered with Brigade's ability to retrofit nineteen buildings in Calvert County with new lighting, resulting in Calvert County and Sydhee refusing to do any future business with it. *Id.* at ¶¶ 42-44. In sum, Brigade alleges that Aegis' actions caused Brigade's business to fail. *Id.* at ¶¶ 17, 22.

In its Motion to Dismiss, Aegis additionally alleges that Sydhee and Brigade engaged in protracted litigation regarding the ownership of the consignment inventory. As Aegis describes it, in September of 2020, Sydhee initiated an action for replevin in the District Court of Maryland for Prince George's County against Brigade and Veterans Storage, Inc. (the "District Court Case"), alleging that Brigade sold some of Sydhee's consigned inventory without its knowledge or consent in violation of their underlying consignment agreement. ECF No. 117-1, at 2-3. Aegis moved to intervene in that case, allegedly to protect its interest in the inventory, which Aegis asserted was collateral for payments it made to Brigade. *Id.* at 3. The state court granted Aegis' Motion to

Intervene. *Id*. In June of 2021, Sydhee voluntarily dismissed the District Court Case based on other pending litigation. *Id*. In October of 2020, Sydhee initiated an action against Brigade in the Circuit Court of Prince George's County, asserting claims for breach of contract and conversion (the "First Circuit Court Case"). *Id*. Also in October of 2020, Brigade initiated an action against Veterans Storage, Inc. in the Circuit Court for Prince George's County (the "Second Circuit Court Case"), alleging that Veterans Storage blocked its access to the storage unit, causing it to incur business losses. *Id*. at 4. The Circuit Court of Prince George's County consolidated the First and Second Circuit Court Cases and ultimately dismissed the case without prejudice. *Id*. The filings in the state court cases provide a significant basis for Aegis' pending Motion.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b) provides that a party may move to dismiss where the Plaintiff has "fail[ed] to state a claim upon which relief can be granted." When ruling on a motion to dismiss, the court considers whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). The court will consider whether the plaintiff has pled factual content allowing reasonable inferences to be drawn that the defendant is "liable for the misconduct alleged." *Id*. The plaintiff need not plead facts that are probable, but must present facts showcasing more than a "sheer possibility" that the conduct perpetuated by a defendant is unlawful. *Id*. The plaintiff has an obligation to provide more than "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555. Pleadings that present "no more than conclusions" will not be "entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679.

## ANALYSIS

4

Aegis advances several arguments as to why Brigade's counterclaims should be dismissed. For the reasons discussed below, these arguments are not persuasive upon a Motion to Dismiss, and thus, do not merit dismissal of Brigade's counterclaims.[2]  However, before the Court can address the substance of Aegis' arguments, it must first resolve the proper law to apply, as well as the materials the Court may consider at this stage of the case.

## I.     Choice of Law

When exercising diversity jurisdiction, this Court applies the choice-of-law rules of the forum state: here, the state of Maryland.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013) ("In a diversity case, a district court applies the conflict-of-law rules of the state where it sits.").  Under Maryland choice of law principles, "procedural matters are governed by Maryland law." *Johnson-Howard v. AECOM Special Missions Services, Inc.*, 434 F.Supp.3d 359, 371 (D. Md. 2020) (citing *Gregoriou v. Explosives Experts, Inc.*, No. CCB-08-384, 2008 WL 3989183, at *2 (D. Md. Aug. 25, 2008)).  When choosing which state's substantive law to apply, courts look to the type of underlying claim.  For tort actions, Maryland adheres to the *lex loci delicti* doctrine, under which courts apply the "law of the state 'where the injury – the last event required to constitute the tort – occurred.'"  *Terry v. Corporate America Family Credit Union*, No. JKB-19-1065, 2019 WL 5065183, at *7 (D. Md. Oct. 9, 2019) (citing *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006)).  This law governs even when the allegedly wrongful conduct occurred in a different state.

---

[2] Aegis also argues that Brigade's claims should be dismissed with prejudice.  ECF No. 117-1, at 10.  *See* ECF No. 119, at 5 ("In the Motion to Dismiss, Aegis asserted that Brigade's Counterclaims should be dismissed with Prejudice.  Brigade did not respond to this contention in its Opposition.  Accordingly, Brigade has conceded that any dismissal should be with prejudice.").  Generally, courts in this district give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, since the Court is declining to dismiss the challenged claims at this time, the Court need not decide whether the claims should be dismissed with prejudice.

*Phillip Morris Inc. v. Angeletti*, 752 A.2d 200, 231 (Md. 2000).  This is true for both the tort of

conversion, *Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 696 (D. Md. 2011),

and the tort of tortious interference with contract, *Terry*, 2019 WL 5065183, at *7.  For contract

actions, Maryland generally applies the law of the place where the contract is made, which is the

place "where the last act necessary to make the contract binding occurs."  *Baker DC, LLC v.*

*Baggette Construction, Inc.*, 378 F.Supp.3d 399, 406 (D. Md. 2019) (citing *RaceRedi Motorsports,*

*LLC v Dart. Mach., Ltd.*, 640 F.Supp.2d 660, 665 (D. Md. 2009); *Montage Furniture Servs., LLC*

*v. Regency Furniture, Inc.*, 966 F.Supp.2d 519, 523 (D. Md. 2013)).

However, where the parties elect the law of a particular state, that "law of the state chosen

by the parties to govern their contractual rights and duties will be applied" unless:

> (a) the chosen state has no substantial relationship to the parties or
> the transaction and there is no other reasonable basis for the parties'
> choice; or (b) application of the law of the chosen state would be
> contrary to a fundamental policy of a state which has materially
> greater interest than the chosen state in the determination of the
> particular issue and which [otherwise] would be the state of
> applicable law in the absence of an effective choice of law by the
> parties.

*Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 467 (4th Cir. 2011) (citing Restatement (Second) Conflict

of Laws § 187(2)(a), (b) (1971)).  The court may consider the parties' agreement as to the

applicable law when deciding whether to apply a selection clause.  *See Hardwire LLC v. Goodyear*

*Tire & Rubber Co.*, 360 F.Supp.2d 728, 732 (D. Md. 2005) ("The parties agree that, pursuant to

the Agreement's choice of law selection, the Agreement 'shall be governed by and construed in

accordance with the laws of the State of Ohio.'  Accordingly, this Court applies Ohio law to

address Counts IV-VII of the Complaint and to determine the validity and enforcement of this

contract.") (internal citations omitted).

"In the Fourth Circuit, courts may apply [contractual] choice of law provisions that are 'sufficiently broad to encompass contract-related tort claims,' . . . to non-contract claims." *Bresler v. Wilmington Trust Company*, 348 F.Supp.3d 473, 488 n. 10 (D. Md. 2018) (citing *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999)).  Under Maryland law, courts look to the intent of the parties as reflected by the plain language of the contract to determine whether a choice of law provision applies to contract related tort claims.  *Superior Bank, F.S.B. v. Tandem Nat. Mortg. Inc.*, 197 F.Supp.2d 298, 309 (D. Md. 2000).  *See Hitachi*, 166 F.3d at 628 (applying a contractual choice-of-law provision to a fraudulent inducement to enter a contract claim based on the breadth of the underlying language); *Felichko v. Schechter*, No. RDB-18-1392, 2019 WL 1318109, at *9 (D. Md. Mar. 22, 2019) (declining to apply a contractual choice-of-law provision to the torts of fraud and negligent misrepresentation because "the Option Agreement provides for the application of Delaware law to the contract itself, but it does not contain the broad 'arising out of or related to' language that would encapsulate contract-related tort claims"); *Bresler*, 348 F.Supp.3d at 488 n. 10 (applying a contractual choice-of-law provision to negligence and fraud claims because the underlying language was "sufficiently broad to encompass contract-related tort claims"); *Plum House IV, Inc. v. Wells Fargo Merchant Services, LLC*, No. CCB-15-2294, 2016 WL 337492, at *3 (D. Md. Jan. 28, 2016) (applying a contractual choice-of-law provision to negligence claims because there was "no reason why a clear, consensual stipulation such as the one filed in this case should not dictate which state's law applies to the parties' controversy, including any negligence claims" and because of "the close relationship of the tort claims to the contract") (citing *Hitachi*, 166 F.3d at 628)); *Pasternak & Fidis, P.C. v. Recall Total Information Management, Inc.*, 95 F.Supp.3d 886, 894-95 (D. Md. 2015) (declining to apply a contractual choice-of-law provision because the alleged tort, gross negligence leading to the destruction of

files stored in defendant's facility, lacked a close relationship to the underlying contract); *Jones v. Koons Automotive, Inc.*, No. DKC-09-3362, 2013 WL 3713845, at *6 (D. Md. Jul. 15, 2013) (declining to apply a contractual choice-of-law provision to various tort claims because this provision applied only to the contract and lacked language suggesting related disputes would be evaluated under the provision); *Superior Bank, F.S.B.*, 197 F.Supp.2d at 309 (declining to apply a contractual choice-of-law provision to fraud and negligent misrepresentation claims because the intent of the parties evidenced in the "plain language of the contract" was not to include "tort claims that are merely related to the contract").

Given the choice of law provision in this case, the Court will apply Florida law to the breach of contract claim.  Aegis is a Florida-based company; accordingly, the chosen forum bears some relationship to the transaction.  ECF No. 85, at ¶ 2.  Additionally, the application of Florida contract law in this case does not appear – and parties do not argue that it is – contrary to any fundamental Maryland policy.  *See Kunda*, 671 F.3d at 467-68 ("Merely because Maryland law is dissimilar to the law of another jurisdiction does not render the latter contrary to Maryland public policy and thus unenforceable in [Maryland] courts. Moreover, there is a heavy burden on [the party] who urges rejection of foreign law on the grounds of public policy.") (internal citations omitted).  Further, both parties apply Florida law in their briefing on the breach of contract claim. *See* ECF No. 117-1, at 7; ECF No. 118, at 5.

There is some question as to whether the choice of law provision in the Agreement impacts which law to apply to Brigade's claims for conversion and tortious interference with a business relationship.  The parties attach differing degrees of significance to the choice for each tort.  Aegis avers – and Brigade does not challenge – that there does not appear to be a material difference between Florida and Maryland conversion law.  ECF No. 117, at 6 n. 5.  However, Aegis asserts

the choice of law provision does not apply to the tortious interference claim, citing this Court's decision in *Neuralstem, Inc. v. StemCells, Inc.* ECF No. 117-1, at 9 (citing *Neuralstem, Inc. v. StemCells, Inc.*, No. AW-08-CV-1173, 2009 WL 2412126, at *3 (D. Md. Aug. 4, 2009)). But, as Brigade rightly points out, *Neuralstem* did not involve a related contractual claim or an underlying agreement with a choice of law provision. ECF No. 118, at 7. *See Neuralstem*, 2009 WL 2412126, at *3 (applying *lex loci delicti* and the principle of depecage to determine whether Maryland or California privilege law applied). Further, Aegis points to no language in the pleadings suggesting that the underlying harm – the alleged conversion of the inventory in which Sydhee had an interest – occurred in Maryland.[3] *See* ECF No. 85, at ¶ 53 (alleging in the Complaint: "[Aegis' President] completed an inspection of Brigade's warehouse in Upper Marlboro, MD, and confirmed that the inventory at issue was no longer at that location"); *id.* at ¶ 57 (alleging in the Complaint, without further detail, that "Aegis was able to locate the remaining, unused inventory at a different warehouse on August 19, 2021.").

Since the parties have not fully briefed the issue of which law applies to the tortious interference claim, and since Aegis's Motion to Dismiss fails under the law cited in their briefing, the Court declines to decide at this time which state's law applies. The Court may revisit the issue at a future date.

## II.    Consideration of Extrinsic Materials

---

[3] It is unclear on what basis Aegis asserts that Maryland is the correct law to apply to Aegis' tortious interference claim. *See Ground Zero Museum Workshop*, 813 F. Supp.2d at 703 ("[B]ecause the injury from the alleged tortious interference occurred in New York, where [the plaintiffs] maintain their business, New York tort law applies."). To the extent that Aegis asks the Court to infer that the second warehouse where the inventory was ultimately found was also in Maryland, the Court cannot do so upon a Motion to Dismiss, where it must draw all inferences in favor of the non-moving party. To the extent that Aegis asks the Court to take judicial notice of the location of the consigned goods once Brigade moved them based on Sydhee's assertions in the state court litigation, ECF No. 117-4, at 3, this would be inappropriate for the reasons discussed in Section II.

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court may not consider extrinsic evidence unless the court converts the motion to one for summary judgment. Fed. R. Civ. P. 12(d). The court should not make such a conversion where it does not give the parties notice and does not afford them the opportunity to conduct reasonable discovery. *Carter v. Baltimore Cty., Maryland,* 39 Fed.Appx. 930, 932-33 (4th Cir. 2002). There are two limited exceptions to this rule. First, the court may consider extrinsic evidence where documents attached to a motion to dismiss are integral to the complaint. *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). However, the authenticity of such documents must not be in dispute. *Id*. This exception is premised on the idea that "the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated [w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Sher v. Luxury Mortgage Corp.*, Civ. A. No. ELH-11-3656, 2012 WL 5869303, at *5 (D. Md. Nov. 19, 2012) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*., 367 F.3d 212, 234 (4th Cir. 2004)). Second, the court may also take judicial notice of certain facts outside of the complaint if they can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011); *Mayor and City Council of Baltimore v. Trump*, 416 F.Supp.3d 452, 482 (D. Md. 2019) ("However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are 'not subject to reasonable dispute,' in that they are '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'").

Matters of public record, such as state court filings, may be judicially noticed. *Sher*, 2012 WL 5869303, at *7. However, while "courts routinely take judicial notice of documents filed in other courts" they do so "not for the truth of the matters asserted . . . , but rather to establish the fact of such litigation and related filings." *Id*. (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). *See Nolte v. Capital One Financial Corp.*, 390 F.3d 311, 317 n.1 (4th Cir. 2004) (declining to take judicial notice of facts alleged in a related civil complaint because a "court cannot take notice of (and so assume the truth of) mere allegations that [Defendant] or its management made false statements or omissions during the class period"); *see also U.S. v. Zayyad*, 741 F.3d 452, 464 (4th Cir. 2014) ("Facts adjudicated in a prior case . . . do not meet either test of indisputability contained in Rule 201(b).") (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). "Adjudicative facts are simply the facts of a particular case." Fed R. Evid. 201, Advisory Committee's Note.

Aegis asks the Court to consider arguments Brigade advanced in filings in Sydhee's state court actions against Brigade and Veteran's Storage, Inc. ECF No. 117-1 at 2-4. Neither of the exceptions to the exclusion of extrinsic evidence allow consideration of these materials. First, Brigade does not reference or rely on materials from the Sydhee litigation in their cross-complaint. Second, while Aegis frames their ask as only requesting that the Court "take judicial notice of the fact that the filings and statements therein were made, and not the truth or falsity of the information contained in the [filings]," *id*., at 2 n. 3, the crux of their argument is that the Court should dismiss Brigade's claims here because their substance is contradicted by statements Brigade made in the state court litigation. Contrary to Aegis' assertion, the Court cannot accept Aegis' argument without weighing, and ultimately, accepting the truth of the statements Brigade made in the other litigation. Importantly, Aegis is not asking the Court to consider information deemed

unimpeachable.  *See Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 655 n. 4 (4th Cir. 2004) (taking judicial notice of published stock prices in the context of a motion to dismiss).  Nor does Aegis ask the Court to consider adjudicated facts from prior judicial decisions – though, were Aegis to do so, such a request might also be rejected.  *Zayyad*, 741 F.3d at 464.  Instead, Aegis asks the Court consider Brigade and Aegis's pleadings and briefing materials from the state cases and then rely on those unadjudicated arguments to reject Brigade's allegations in this case.  *See Nolte*, 390 F.3d at 317 n.1.  While the Court may note the existence of the other cases, relying on the substance of statements Brigade made in cases which were either voluntarily dismissed or dismissed on procedural grounds is inappropriate as their substance is not indisputable under Fed. R. Evid. 201.  Accordingly, the Court declines to consider the contents of the filings in the state court cases at this juncture.

### III.    Brigade Has Sufficiently Alleged Claims for Conversion, Breach of Contract, and Tortious Interference with a Business Relationship.

Aegis also seeks to dismiss Brigade's counterclaims on the basis that Brigade has failed to state a claim sufficient to survive a motion to dismiss.  For the reasons discussed below, for each of the three counterclaims in question, Brigade has plausibly alleged enough to defeat Aegis's pending Motion.

### A.  Count I: Conversion

Aegis's primary argument to dismiss Brigade's conversion claim is that Brigade lacks standing to sue for conversion.[4]  "Under Florida law, a conversion is 'an unauthorized act which deprives another of his property permanently or for an indefinite time.'"  *Fogade v. ENB Revocable*

---

[4] As mentioned above, there is an active dispute as to whether Maryland or Florida law applies to Brigade's tort claims.  However, since Aegis argues – and Brigade does not dispute – that there is no material difference in the law as to conversion in these states, ECF No. 117-1, at 6 n. 5, the Court will apply Florida law as used in the moving party's Motion.

*Trust*, 263 F.3d 1274, 1291 (11th Cir. 2001) (citing *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So.2d 1157, 110-61 (Fla. Dist. Ct. App. 1984)).  The "essence of conversion is not the possession of the property . . . but possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property."  *Archer v. City of Winter Haven*, 846 Fed.Appx. 759, 766 (11th Cir. 2021) (citing *Senfeld*, 450 So.2d at 1161).  It is "a well-established rule of corporate law that a corporation cannot authorize illegal conduct."  *Fogade*, 263 F.3d at 1292.  "In the context of secured transactions, once default has occurred, a secured creditor has the right to possess the collateral and is authorized to take possession of the collateral."  *Beach Community Bank v. Disposal Services, LLC*, 199 So.3d 1132, 1134 (Fla. Dist. Ct. App. 2016).  Where more than one secured party may be entitled to possession of the collateral, the parties should refer to the priority rules to determine who is the senior secured party: normally, a junior who refuses to relinquish possession of collateral upon the demand of a senior would be liable for conversion.  FL St. § 679.609, Editor's Note n. 5.  *See Rayfield Inv. Co. v. Kreps*, 35 So.3d 63, 65 (Fla. Dist. Ct. App. 2010) (finding that a creditor with a perfected security interest had a superior interest in inventory to that of a consignor).

Three of Aegis's arguments can be dispensed with quickly.  While Aegis disputes that it repossessed the underlying inventory, ECF No. 117-1, at 6, that determination is one of fact not suited for a motion to dismiss.  Aegis also asserts that Brigade's assertions in their counterclaims are inconsistent with the claims Brigade made in the state court litigation against Sydhee.  ECF No. 117-1, at 6.  As discussed above, it is inappropriate to take judicial notice of facts a party has asserted in filings in other cases; thus, any alleged inconsistency is not a proper basis for dismissal at this time.  *See Nolte*, 390 F.3d at 317 n. 1 ("Although the filing of a SEC complaint against Willey is indisputable, the facts alleged therein are not. A court cannot take notice of (and so

assume the truth of) mere allegations . . . ").  Additionally, while Aegis disputes that its security interest is subordinate to Sydhee's, ECF No. 117-1, at 6, it provides no basis for this assertion.

Aegis's primary argument is that Brigade lacks standing to sue for conversion because the conversion claim belongs to Sydhee as the consignor of the allegedly converted goods.  "A consignment relationship is one in which one party, the consignor or principal, transfers certain goods to another party, the consignee or factor, who undertakes to sell the goods on the consignor's behalf in exchange for a commission on the sale."  *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1312 (11th Cir. 2014).  Unlike an assignment, in which the assignor completely transfers all interests in and rights of ownership to the assignee, *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 855 (11th Cir. 2013), the consignor delegates possession and control to the goods while retaining an interest in the proceeds of the sale of the goods.  *McFliker*, 771 F.3d at 1312 (finding the need to impose a fiduciary obligation on consignees because "[a] consignor must not only entrust possession and control over his goods to the consignee, but also trust the consignee to sell his goods for a fair price and remit the proceeds (less a commission) to him").  *See Fresh Results LLC v. ASF Holland, B.V.*, No. 17-cv-60949-BLOOM/Valle, 2019 WL 4573257, at *8 (S.D. Fla. Sep. 20, 2019) (granting motion to dismiss conversion claim because the plaintiff failed to allege they were a consignee and thus failed to allege that they had an equitable interest sufficient to sustain a claim of conversion).

As a consignee, Brigade had a right to possession at the time the property was allegedly taken.  Since Brigade has claimed the existence of a consignor-consignee relationship with Sydhee, they have adequately alleged a right to sue under the theory of conversion.

Aegis, relying on *Rasmussen v. Cent. Fla. Council Boy Scouts of Am. Inc.*, argues that Brigade lacks standing to sue for conversion because it shares an interest in the allegedly converted

inventory with Sydhee.  412 F.App'x 230 (11th Cir. 2011).  In *Rasmussen*, the Eleventh Circuit affirmed the lower court's decision that the plaintiff Council had standing to recover the disputed property.  412 F.App'x at 234. *See Cent. Fla Council Boy Scouts of Am. Inc. v. Rasmussen*, No. 6:07-cv-1091-Orl-19GJK, 2010 WL 1258070, at *7 (M.D. Fla. Mar. 29, 2010) (finding that plaintiff Council had a right to sue to collect on items that belonged to a church after the church assigned its rights in the equipment to the Council "in order that [the Council] may obtain the return of the [E]quipment").  However, that case does not state the inverse: that the church could not sue for conversion because it had assigned its interest in the equipment to the Council.  Nor does *Rasmussen* address a shared interest like that of consignor-consignee – which is what is at issue in this case.  Rather, an assignment reflects the transfer of all interests and rights in the things assigned.  *MDS (Canada) Inc.*, 720 F.3d at 855.  Further, in *Rasmussen*, the church had explicitly assigned the right to collect to the Council: even if such an assignment precluded the church from suing for conversion, the Court has not been presented with any comparable language that limits the right to collect to only Sydhee.

Given the shared nature of the consignor-consignee relationship, and absent any contractual language to the contrary, it is not sufficiently clear that Brigade lacks standing to sue for conversion.  Accordingly, Brigade has alleged enough to survive a motion to dismiss.

### B.  Count II: Breach of Contract

To state a claim for breach of contract, a plaintiff must plead "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Farman v. Deutsche Bank Nat'l Tr. Co. as Tr. For Long Beach Mortg. Loan Tr. 2006-05*, 311 So. 3d 191, 195 (Fla. Dist. Ct. App. 2020).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Saravia v. Select Portfolio Servicing, Inc.*, No. 1:13-cv-01921-RDB, 2014 WL 2865798, at *7 (D. Md. Jun. 23, 2014) (citing *Iqbal*, 556 U.S. at 678).

Brigade alleges that Aegis breached the underlying loan agreement both by demanding payment from Brigade's customers and by repossessing the consignment inventory, which Brigade alleges Aegis had no right to repossess.  ECF No. 101, at 20.  Aegis, in response, makes multiple arguments, which the Court addresses in turn below.

First, Aegis argues that Brigade failed to identify the allegedly breached provisions of the contract.  ECF No. 117-1, at 7.  "[M]erely alleging that the contract as a whole was breached is not enough to state a claim [since] Plaintiffs must also 'identify what provisions of the contract were breached as a result of the acts at issue.'" *Remington v. Newbridge Securities Corp.*, No. 13-60384-CIV, 2013 WL 2444719, at *3 (S. D. Fla. Jun. 5, 2013) (citing *Wolff v. Rare Medium, Inc.*, 171 F.Supp.2d 354, 358 (S.D.N.Y. 2001)).  The purpose of this standard is to ensure that defendants have fair notice of the asserted claims so they can both answer and prepare for trial. *Wolff*, 171 F.Supp.2d at 358.  *See City of Delray Beach v. Sherman Williams American Legion, Post 188*, 358 So.3d 440, 443-44 (Fla. Dist. Ct. App. 2023) (dismissing a breach of contract claim because parties failed to establish the existence of a contractual relationship, including whether there was a termination provision that could be breached).  Given the liberal standard of review at the motion to dismiss stage, the relevant question then is whether Brigade has pled enough to put Aegis on notice of their potential breach and to permit them to prepare for trial.  In Brigade's pleadings, they aver that Aegis "did not have the right to demand payment from account debtors, who are customers of Brigade for: (i) amounts that account debtors do not owe, and (ii) amounts owed by a different customer . . . not the one against whom the demand was made."  ECF No. 101, at 20.  While Brigade does not specify which portions of the contract were violated, Brigade

16

provides enough notice to Aegis that they will have to defend their actions under the provisions of the contract that govern its authorization to collect from Brigade's clients. *See e.g.* ECF No. 54-1, at 6 (addressing, for example, "Authorizations to Purchaser").

Second, Aegis asserts that Brigade's claims, even if true, do not constitute a breach of contract and instead reflect "a dispute between Aegis and Sydhee" regarding priority of interest in the consignment inventory. ECF No. 117-1, at 7. As discussed above, absent language in an agreement between them to the contrary, the nature of a consignment interest is such that both Brigade and Sydhee retain an interest in the underlying inventory. Reducing the conflict to one between Aegis and Sydhee ignores that Brigade may retain an interest in the inventory subject to the underlying contract.

Third, Aegis challenges the plausibility of Brigade's breach of contract claim. A complaint "must be dismissed if it does not allege 'a plausible claim for relief.'" *Saravia*, 2014 WL 2865798, at *3 (citing *Iqbal*, 556 U.S. at 679). In assessing plausibility, "a court must 'draw on its judicial experience and common sense' to determine whether the pleader has stated a plausible claim for relief." *Id*. The assessment is not whether the facts themselves are plausible or likely: rather "'a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Solomon v. Capital One Bank USA*, No. GJH-14-03638, 2014 WL 7336694, at *2 (D. Md. Dec. 19, 2014) (citing *Iqbal*, 556 U.S. at 679). "Stated otherwise, a plaintiff need only plead sufficient facts to 'nudg[e]' a claim 'across the line from conceivable to plausible.'" *F.T.C. v. Innovating Marketing, Inc.*, 654 F.Supp.2d 378, 389 (D. Md. 2009) (citing *Twombly*, 550 U.S. at 570). *See Ohio Learning Centers, LLC v. Sylvan Learning, Inc.*, No. RDB-10-1932, 2012 WL 3025106, at *15 (D. Md. Jul. 24, 2012) (dismissing a claim as implausible because the complaint was "completely devoid of any specific allegation tending to show that there

17

was an actual agreement" and because the plaintiff failed to allege any facts that excused self-interested conduct as an explanation for parallel behavior).

Aegis argues that it is unlikely that "a single mistaken request for payment caused a commercial customer to terminate its entire business with Brigade and that the termination then caused Brigade's business to fail completely." ECF No. 117-1, at 8. Similarly, Aegis argues that it is unlikely that it would have "acted recklessly and tried to grab cash or value wherever it could[;]" that such actions "led to Brigade's business being destroyed," or that "Aegis acted recklessly in dealing with Brigade's customers" and that "these customers stopped doing business with Brigade" as a result. *Id.* (citing ECF No. 101 at ¶¶ 13, 17, 18). These arguments address the truth of the factual allegations: they do not suggest that such allegations, if truthful, would not plausibly support a legal claim. Upon a Motion to Dismiss, the relevant inquiry is not whether the factfinder would likely find these allegations true, but whether these allegations – taken as true – support a claim for breach of contract. *See Innovative Marketing*, 654 F.Supp.2d at 389 (denying the defendant's Rule 12(b)(6) Motion to Dismiss and emphasizing that the Supreme Court's decision in *Iqbal* did not create a probability requirement).

Fourth, Aegis challenges the internal consistency of the allegations underlying Brigade's breach of contract claim. Generally, when dismissing for inconsistency, the court looks to whether the facts as alleged in the Complaint necessarily contradict each other in such a way that they undermine factual support for a plaintiff's claim. *See Solomon*, 2014 WL 7336694, at *4 (declining to construe allegations in the light most favorable to the plaintiff because "his allegation that 'the Defendant denied [sic] to review the Plaintiff's HAMP application' . . . [was] entirely inconsistent with other allegations in his complaint that indicate that Defendant *did* review Plaintiff's application."); *Saravia*, 2014 WL 2865798, at *5 ("Furthermore, there are directly

18

conflicting allegations contained within the Complaint – that Plaintiff paid to get the modification and contrarily that he withheld payments to receive a modification."); *Ramos v. Bank of America, N.A.*, No. DKC 11-3022, 2012 WL 5928732, at *4 (D. Md. Nov. 26, 2012) (disregarding contradictory factual allegations because they "explicitly aver the *non*-existence of such a contract, directly contradicting her conclusory allegation that she, along with millions of other homeowners, entered into a TPP agreement with Defendants."); *Hosack v. Utopian Wireless Corp.*, No. DKC-11-0420, 2011 WL 1743297, at *5 (D. Md. May 6, 2011) ("[W]hen a complaint contains inconsistent and self-contradictory statements, it fails to state a claim.").

In support of its argument, Aegis relies on three sentences in Brigade's filings regarding its breach of contract claim: two address the alleged repossession and the third addresses communication with Brigade's customers.  ECF No. 117-1, at 8.  Unlike in the cases above, the statements are not internally contradictory.  Aegis could have "acted recklessly and tried to grab cash or value wherever it could" while "allegedly [repossessing] the Consignment inventory" and "[acting] recklessly in dealing with Brigade's customers."  *Id*.  While Aegis might dispute the truth of these allegations, such a dispute cannot be resolved upon a Motion to Dismiss.

Accordingly, Brigade has sufficiently alleged a claim for breach of contract.

## C.  Count III: Tortious Interference with Advantageous Business Relationships

In Maryland, the elements of a claim for tortious interference with a contract are: (1) existence of a contract between a plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff.  *Sensormatic Sec. Corp. v. Sensormatic*

*Electronics Corp.*, 249 F.Supp.2d 703, 710 (D. Md. 2003).[5]  "There are two forms of tortious interference in Maryland: 'inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract.'" *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CCB-13-617, 2013 WL 3776933, at *3 (D. Md. Jul. 17, 2013).  "In order to state a claim under either theory, the plaintiff must allege: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Id.*  "Tortious intent is intent 'to harm the plaintiff or benefit the defendant at the expense of the plaintiff.'" *De Simone v. VSL Pharmaceuticals, Inc.*, No. TDC-15-1356, 2018 WL 7199627, at *1 (D. Md. Feb 1, 2018) (citing *Macklin v. Robert Logan Associates*, 639 A.2d 112, 119 (Md. 1994)).  "In this context, wrongful conduct is 'incapable of precise definition.'" *Gorby v. Weiner*, No. TDC-13-3276, 2014 WL 4825962, at *10 (D. Md. Sept. 23, 2014) (citing *Macklin*, 639 A.2d at 119).  "Thus, 'to recover for tortious interference with business or contractual relationships, the defendant's conduct must be 'independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships.'" *Finley Alexander Wealth Management, LLC v. M&O Marketing, Inc.*, No. GJH-19-1312, 2021 WL 1215769, at *18 (D. Md. Mar. 31, 2021) (citing *Lyon v. Campbell*, 707 A.2d 850, 860 (Md. Ct. Spec. App. 1998)).  "Acts that amount to 'independently wrongful or unlawful' conduct 'include common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith.'" *Brown v.*

---

[5] As discussed above, the Court reserves answering the question of whether Maryland or Florida law governs the tortious interference claim.

*Board of Ed. of Prince George's Cty., Maryland*, No. DLB-20-2632, 2022 WL 888424, at *10 (D. Md. Mar. 25, 2022) (citing *K.G. Tile, LLC v. Summitville Tiles, Inc.*, No. 20-cv-02072-SAG, 2022 WL 426000, at *11 (D. Md. Feb, 11, 2022)).  However, "[i]nterference with contract is not tortious where a defendant, in good faith, asserts a legally protected interest using appropriate means." *K.G. Tile*, 2022 WL 426000, at *6.

Aegis advances three arguments as to why Brigade's tortious interference claim should be dismissed.  Two can be dispensed with quickly, while the third merits extended discussion.  First, as discussed above, any alleged inconsistency between Brigade's arguments in the state court litigation and its claims in this case are not a basis for dismissal at this time.  Second, while Aegis alleges that the pleadings are contradictory, it does not point to a specific discrepancy justifying dismissal at this time.

Aegis's third argument – that Brigade failed to sufficiently allege that Aegis's purpose in repossessing the inventory was to interfere with Aegis's business relationship – fares no better.  Although Aegis disputes that they would have repossessed the inventory knowing that it would impede Brigade's business prospects given their contractual relationship with Brigade, the Court cannot resolve this question on a Motion to Dismiss.

Further, while "acts which [only] incidentally affect another's business relationships are not a sufficient basis for the tort," "wrongful or unlawful acts include common law torts." *Alexander & Alexander Inc. v. B. Dixon Evander & Associates, Inc.*, 336 Md. 635, 656-57 (1994). "'[A]ny act by defendant which is wrong or unlawful . . . done intentionally without cause or excuse, which is for the indirect purpose of injuring the plaintiff, or of benefitting the defendant at the expense of the plaintiff, will constitute tortious interference." *Waypoint Management Consulting, LLC v. Krone*, No. ELH-19-2988, 2022 WL 2528465, at *55 (D. Md. Jul. 6, 2022)

(citing *Fowler*, 89 Md.App. at 470) (internal citations omitted).  "[M]alice in this form of action means legal malice, not ill will or spite, and need be only a wrongful or unlawful act done intentionally without cause or excuse."  *Id.* (quoting *Sharrow v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 764-76 (1986)).  *See Beck v. Peiffer*, No. RDB-11-3075, 2012 WL 2711253, at *4 (D. Md. Jul. 6, 2012) (denying motion to dismiss because the plaintiff's allegation that the defendant "wrongfully and intentionally induced Defendants Peiffer and Sullivan to breach the Stock Purchase Agreement" was sufficient to establish intent for the purpose of a motion to dismiss).

Here, Brigade has alleged that Sydhee had an interest in the underlying property, that Aegis illegally converted that property, and thus ruined their business relationship with Sydhee and with Calvert County.  ECF No. 101, at ¶¶ 42-44.  While Aegis may later avoid liability by showing that their conduct was justified by Brigade's default and Aegis' interest in the property, it is inappropriate at this stage to determine the priority of relative interests.  *See Progressive Septic, Inc. v. SeptiTech, LLC*, No. ELH-09-03446, 2011 WL 939022, at *17 (D. Md. Mar. 15, 2011) ("Indeed, '[i]t is well established that a defendant may avoid liability for tortious interference with a contract by proving that its conduct was justified or excused in some way.'") (citing *Fowler*, 89 Md.App. at 467); *MNC Commercial, Div. of MNC Credit Corp. v. Park Jensen Co., Inc.*, No. HAR-90-1055, 1991 WL 74137, at *3 (D. Md. May 6, 1991) (granting the plaintiff's motion to dismiss a counterclaim of tortious interference of contract because they held a perfected security interest in the terms of the loan agreement between the parties, which gave it a legitimate interest in the business relationship between the defendant and the third party).

Accordingly, Brigade has sufficiently alleged a claim for tortious interference with business relationships.

**CONCLUSION**

For the foregoing reasons, Aegis's Motion to Dismiss is, hereby, denied.  The parties shall

file a Joint Proposed Scheduling Order within fourteen days.

So ordered.

Dated:  August 18, 2023                                      _____/s/_____

Ajmel A. Quereshi

U.S. Magistrate Judge